KILLEEN v WAYNE COUNTY ROAD COMMISSION

Docket No. 64614. Submitted April 18, 1984, at Lansing.—Decided September 5, 1984.

On November 3, 1981, Wayne County voters adopted a new home rule charter, to become effective January 1, 1983, which created a road commission department to exercise all powers and duties provided by law and such additional powers and duties as might be assigned to it under a reorganization plan. On January 7, 1982, the then-existing board of county road commissioners approved a six-year agreement with the Association of Road Commission Administrators, a newly formed labor organization consisting principally of Wayne County Road Commission executive, managerial and supervisory personnel in three bargaining units. On January 13, 1982, George F. Killeen, John C. Hertel, George E. Ward, and Justine Barnes brought an action in the Wayne Circuit Court against the Wayne County Road Commission and the Association of Road Commission Administrators. The action sought a declaratory judgment and superintending control to declare the agreement null and void as contrary to law and public policy and that "the recognition of said bargaining unit is a flagrant attempt to circumvent the newly established Charter for the County of Wayne and to insulate certain personnel in high paying positions so that the newly elected Wayne County Executive will be unable to make administrative and personnel changes with the road commission". The complaint described plaintiff Killeen as "a member of the Wayne County Board of Commissioners and as such has responsibility for approving the annual budgets submitted by the Wayne County Road Commission and also participates in the selection and appointment of the directors of the road commission and the appointment of the members of the Wayne

REFERENCES FOR POINTS IN HEADNOTES

[1] 63A Am Jur 2d, Public Officers and Employees §§ 300, 312, 316.
[1, 2] 59 Am Jur 2d, Parties §§ 26-31.
[2] 74 Am Jur 2d, Taxpayer's Action §§ 1-4, 28.
Taxpayer's standing to raise constitutional question in Federal Court. 20 L Ed 2d 1671.

County Civil Service Commission who oversee hiring for the road commission". The complaint described Senator Hertel merely as "a taxpayer residing in the City of Harper Woods, County of Wayne". The complaint described plaintiffs Ward and Barnes as "President and Vice President respectively of the Wayne County Charter Commission * * * and are also residents and taxpayers of the County of Wayne". The court, David C. Vokes, J., granted accelerated judgment for defendant on the grounds that plaintiffs lacked standing to sue as taxpayers and lacked standing to sue as public officials because there was no allegation that any public body had authorized any action or asked the individual plaintiffs to act for them and that Senator Hertel lacked standing because the charter legislation, for which he voted, had not been blocked. Plaintiffs moved for rehearing and for leave to file an amended complaint to add parties and cure the standing defect. The proposed amended complaint attached to plaintiffs' motion for rehearing added an allegation that Senator Hertel "is a member of the Michigan State Senate and has been duly authorized on behalf of the Michigan State Senate to bring this action". The proposed amended complaint alleged that the eight additional members of the charter commission "are also members of the Wayne County Charter Commission and they have been authorized to bring this action on behalf of the Wayne County Charter Commission". The proposed amended complaint alleged "that the Wayne County Charter Commission is a duly constituted public body created by statute and has commenced this action to challenge the agreement entered into by and between the defendants herein on January 6, 1982". While the motion for rehearing was pending, the court adjourned the hearing in order to give the Attorney General an opportunity to intervene, pursuant to Senate Resolution No. 380. The Attorney General declined to intervene. In light of the Attorney General's refusal to intervene, the Senate passed Senate Resolution No. 434 directing "the General Counsel of the Senate to act on behalf of the State Senate in an official capacity in an action pending in Wayne County Circuit Court to void the contract between the Wayne County Road Administrators and the Wayne County Road Commission". Thereafter, the Senate General Counsel filed a motion to intervene and a proposed complaint, asking for a declaration that the collective-bargaining agreement was null and void. The court denied rehearing and intervention, stating that the Senate and charter commission resolutions did not correct the standing defect and

that the proper remedy was either an appeal or a new lawsuit with proper parties. Plaintiffs appealed. *Held:*

1. Killeen did not have standing as a member of the Board of Commissioners. The illegal activity complained of does not fall within the scope of his official duties or affect the board of commissioners.

2. Neither charter commission nor state senate membership confer status to sue in this case. Public officials have standing to sue commensurate with their public duties and trusts. There was no showing that duties as a state senator or charter commission member included a supervisory or regulatory function over the road commissioners.

3. A taxpayer has standing to sue where he shows with particularity a threat that he will sustain substantial injury or suffer loss or damage as a taxpayer through increased taxation and the consequences thereof. None of the plaintiffs or proposed plaintiffs have standing to sue as taxpayers.

Affirmed.

1. ACTIONS — STANDING — PUBLIC OFFICERS.

A public official does not have standing to sue a public agency over activities which do not fall within the scope of the official's duties as a public official.

2. ACTIONS — STANDING — TAXPAYER'S SUIT.

A taxpayer, to have standing to sue a public agency concerning alleged illegal activity, must show with particularity a threat that he will suffer substantial injury or suffer loss or damage as a taxpayer through increased taxation and the consequences thereof.

*Milton L. Mack, Jr.,* for plaintiffs.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann),* for the Association of Road Commission Administrators.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and T. GILLESPIE,* JJ.

PER CURIAM. Plaintiffs appeal from a Wayne County Circuit Court order which granted defen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dants' motions for accelerated judgment, dismissing the action because of plaintiffs' lack of standing.

On November 3, 1981, Wayne County voters adopted a new home rule charter, which became effective January 1, 1983. Article IV, § 4.361 creates "the department of the road commission". Section 4.362 prescribes the powers and duties of the road commission:

"The department may exercise all powers and duties provided by law. Those powers and duties are not modified by this Charter and may not be modified by a reorganization plan, but additional powers and duties may be assigned the department by the reorganization plan."

On January 7, 1982, the then-existing board of county road commissioners approved a six-year agreement with the Association of Road Commission Administrators, a newly formed labor organization consisting principally of Wayne County Road Commission executive, managerial and supervisory personnel in three enumerated bargaining units.

On January 13, 1982, plaintiffs commenced this action for declaratory judgment and superintending control to declare the agreement null and void. The complaint alleged that the agreement was contrary to law and public policy and that "the recognition of said bargaining unit is a flagrant attempt to circumvent the newly established Charter for the County of Wayne and to insulate certain personnel in high paying positions so that the newly elected Wayne County Executive will be unable to make administrative and personnel changes within the road commission".

The complaint describes plaintiff Killeen as fol-

lows: "a member of the Wayne County Board of Commissioners and as such has responsibility for approving the annual budgets submitted by the Wayne County Road Commission and also participates in the selection and appointment of the directors of the road commission and the appointment of the members of the Wayne County Civil Service Commission who oversee hiring for the road commission".

The complaint describes Senator Hertel merely as "a taxpayer residing in the City of Harper Woods, County of Wayne".

The complaint described plaintiffs Ward and Barnes as "President and Vice-President respectively of the Wayne County Charter Commission * * * and are also residents and taxpayers of the County of Wayne".

On the day the complaint was filed, the circuit court issued an order to show cause and a temporary restraining order forbidding defendants from taking any action to implement, ratify, or adopt the collective-bargaining agreement.

On January 27, 1982, the Wayne County Road Commission moved for accelerated judgment on the grounds that plaintiffs lacked standing to sue and that the court lacked jurisdiction because exclusive jurisdiction of the action was vested in the Michigan Employment Relations Commission. On January 28, 1982, the Association of Road Commission Administrators filed a nearly identical motion.

After briefing and arguments, the circuit court filed an opinion, granting motions for accelerated judgment, on February 16, 1982. The circuit court judge decided that plaintiffs lacked standing as taxpayers on the basis of *Killeen v Wayne County*

*Civil Service Comm,* 108 Mich App 14; 310 NW2d 257 (1981).

The circuit court judge also held that plaintiffs lacked standing to bring the action as public officials because "there is no allegation that the State Senate, the board of commissioners nor *[sic]* the charter commission have authorized any action or have asked any one of these persons to act for them in any official capacity".

Finally, the circuit court judge ruled that Senator Hertel lacked standing to bring the action because, unlike the situation in *Kennedy v Sampson,* 167 US App DC 192; 511 F2d 430 (1974), on which plaintiffs relied, "Senator Hertel's action in voting for the Charter Legislation has not been blocked, the act is effective and is operating. His senatorial actions have come to fruition and not frustration."

Following the entry of an order granting accelerated judgment, plaintiffs filed a motion for rehearing and for leave to file an amended complaint "in order to cure the standing defects cited in this court's opinion and to add parties". The motion for rehearing sought leave to add as plaintiffs eight additional members of the Wayne County Charter Commission, and sought to enhance Senator Hertel's standing by reference to Senate Resolution 380, which allegedly authorized Hertel to bring the action on behalf of the Senate.

The amended complaint attached to plaintiffs' motion for rehearing added an allegation that Senator Hertel "is a member of the Michigan State Senate and has been duly authorized on behalf of the Michigan State Senate to bring this action". The amended complaint alleged that the eight additional members of the charter commission "are also members of the Wayne County

Charter Commission and they have been authorized to bring this action on behalf of the Wayne County Charter Commission". The amended complaint alleged "that the Wayne County Charter Commission is a duly constituted public body created by statute and has commenced this action to challenge the agreement entered into by and between the defendants herein on January 6, 1982".

The allegations that the charter commission endorsed the lawsuit were based on a resolution passed by the charter commission to the effect "that the charter commission hereby authorized court action, including any appeal, to establish that the purported Road Commission Collective-Bargaining Contract entered in after voter adoption of the County Charter is against public policy and unenforceable". At the same meeting, the charter commission voted not to expend charter commission funds for the lawsuit.

While the motion for rehearing was pending, the circuit court judge adjourned the hearing until April 15, 1982, in order to give the Attorney General an opportunity to intervene, pursuant to Senate Resolution No. 380. By letter opinion dated April 9, 1982, the Attorney General declined to intervene, concluding that "boards of county road commissioners have, in my opinion, the authority to enter into collective-bargaining agreements during the time period between approval of a county charter and the date upon which the charter becomes operative". The Attorney General based his opinion on the public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* and *Wayne County Civil Service Comm v Bd of Supervisors,* 384 Mich 363; 184 NW2d 201 (1971).

In light of the Attorney General's refusal to

intervene, the Senate passed Senate Resolution No. 434 on April 20, 1982, directing "the General Counsel of the Senate to act on behalf of the State Senate in an official capacity in an action pending in Wayne County Circuit Court to void the contract between the Wayne County Road Administrators and the Wayne County Road Commission". Thereafter, the Senate General Counsel filed a motion to intervene and a proposed complaint, asking for a declaration that the collective-bargaining agreement was null and void.

After further argument and briefing, the circuit court rendered an opinion April 23, 1982, denying rehearing and intervention. The circuit court denied rehearing because it felt that the original decision was correct and, in addition, that plaintiffs' remedy was either an appeal or the commencement of a new lawsuit with proper parties. The circuit court judge also ruled that the Senate and charter commission resolutions failed to repair defective standing because plaintiffs still "had not stated anything which would show that they had suffered the type of injury which would give them standing in this particular lawsuit". He said:

"The court did not state that if the Senate or the county commission or the charter commission were added that the plaintiffs would have standing. The court in its opinion said there was no allegation that 'State Senate, the board of commissioners nor the charter commission have authorized any action or have asked anyone to act for them in an official capacity.' The court was merely noting the bareness of the individual plaintiffs. The court did not rule that plaintiffs lacked standing for the reason that they had not been asked by their respective bodies to represent them. The court found that the plaintiffs had not stated anything which would show that they had suffered the type of

injury which would give them standing in this particular lawsuit."

The circuit court judge repeated that plaintiffs' proper remedy was either an appeal or a new lawsuit with proper parties rather than amendment to add new parties. He said:

"To try and to roll all of these matters into one lawsuit at this time would appear to this court not advisable. It would present a patchwork quilt of legal contentions, legal decisions, legal rulings and theories that would but add to the confusion."

Finally, the trial judge denied intervention by the State Senate General Counsel on behalf of the Senate pursuant to Senate Resolution No. 434.

The issues for our consideration are whether the plaintiffs have standing to bring the action as government officials or as taxpayers.

Plaintiff Killeen's status as a member of the Wayne County Board of Commissioners does not confer upon him standing to bring this action. On this point our decision in *Killeen v Wayne County Civil Service Comm, supra,* is controlling. There Killeen sued the Wayne County Civil Service Commission as an individual, taxpayer and member of the Wayne County Board of Commissioners to challenge the Wayne County Civil Service Commission's approval of one Petitpren's provisional appointment to the position of assistant director of personnel services for the Wayne County Road Commission. The circuit court held that Killeen had standing as a taxpayer, but we reversed. We held that plaintiff lacked standing as a taxpayer, as a private person and as an elected public official. As to Killeen's claim of standing as an elected public official, we stated:

"The rule that public right actions must be brought by public officials vested with such responsibility is not satisfied by the mere fact that plaintiff alleges that as a duly elected member of the Wayne County Board of Commissioners he was especially interested in promoting the lawful, orderly and efficient administration of all the county's boards, commissions and departments. The plaintiff clearly brought this action individually and not in his official capacity as a member of the board of commissioners. It is also apparent that the board of commissioners is not a party to the suit. Plaintiff alleges nothing which indicates that because of his official position he has been entrusted to oversee the proper functioning of the Civil Service Commission, nor could he if he wished to. The alleged illegal activity complained of does not fall within the scope of plaintiff's official duties or affect the board of commissioners. In short, the mere fact that plaintiff also is a member of the Wayne County Board of Commissioners does not pass muster to confer standing to maintain the instant action." *Killeen, supra,* pp 20-21.

Killeen's posture is no better in this case, and we hold that he lacks standing as a public official.

Charter commission members Ward and Barnes, along with State Senator Hertel, rest their public-official standing arguments on the grounds that the contract complained of nullified their legislative voting power. These plaintiffs rely on a line of federal standing cases commencing with *Coleman v Miller,* 307 US 433; 59 S Ct 972; 82 L Ed 1385; 122 ALR 695 (1939). There the Court held that state senators whose votes were overridden by allegedly illegal executive action in the form of a tie-breaking vote by the lieutenant-governor had standing to compel a proper record of legislative action under Article V of the US Constitution, which governs the power to amend. The Court found that the plaintiffs had suffered a cognizable injury in their official capacities, as "these sena-

tors have a plain, direct and adequate interest in maintaining the effectiveness of their votes". *Coleman, supra,* 307 US 438. This principle was more recently reflected in *Kennedy v Sampson,* 167 US App DC 192; 511 F2d 430 (1974), where it was held that Senator Kennedy had standing to sue the executive for injury allegedly due to an unlawful pocket veto of legislation which the senator had supported. The Court concluded by stating:

"In the present case, appellee has alleged that conduct by officials of the executive branch amounted to an illegal nullification not only of the Congress' *[sic]* exercise of its power, but also of appellee's exercise of his power. In the language of the *Coleman* opinion, appellee's object in this lawsuit is to vindicate the effectiveness of his vote. No more essential interest could be asserted by a legislature. We are satisfied therefore, that the purposes of the standing doctrine are fully served in this litigation." *Kennedy, supra,* p 198. See also *Riegle v Federal Open Market Committee,* 211 US App DC 284; 656 F2d 873 (1981), *cert den* 454 US 1082; 102 S Ct 636; 70 L Ed 2d 616 (1981); *Goldwater v Carter,* 199 US App DC 115; 617 F2d 697 (1979), *vacated on other grounds* 444 US 996; 100 S Ct 533; 62 L Ed 2d 428 (1979).

We note initially that we are not bound by federal standing analysis, though some state courts have employed the federal cases as persuasive authority. See, *e.g., Moore v Shanahan,* 207 Kan 645; 486 P2d 506 (1971); *McCaffrey v Gartley,* 377 A2d 1367 (Me, 1977); *Zemprelli v Thornburgh,* 47 Pa Commw 43; 407 A2d 102 (1979). We are further of the opinion that application of the federal principles could not confer standing on these plaintiffs based upon their legislative prerogative.

To satisfy standing requirements in federal court, a party must demonstrate: (1) that he has

personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision. *Valley Forge Christian College v Americans United for Separation of Church & State,* 454 US 464, 474; 102 S Ct 752; 70 L Ed 2d 700 (1982). The *Coleman* line of cases demonstrates that the first requirement above may be met where a legislator alleges that his vote has been nullified, *Kennedy,* or his influence as a legislator diminished, *Riegle.* In our case, however, the respective votes of Senator Hertel and charter commissioners Ward and Barnes have been counted, and their legislative work-product enacted; at this juncture their special interest as lawmakers has ceased. See *American Federation of Government Employees v Pierce,* 225 US App DC 61; 697 F2d 303 (1982) (member of the House of Representatives lacked standing to sue over allegedly improper execution of an enacted law), *Metcalf v National Petroleum Council,* 407 F Supp 257 (D DC, 1976), *aff'd* 180 US App DC 31; 553 F2d 176 (1977) (legislator denied standing to contest actions which he claimed impaired the effectiveness of legislation for which he voted and on which his vote was duly counted). As the court of a sister state has observed, after reviewing federal authority, once "votes which [lawmakers] are entitled to make have been cast and duly counted, their interest as legislators ceases". *Wilt v Beal,* 26 Pa Commw 298; 363 A2d 876 (1976). We conclude that none of our plaintiffs have standing on the grounds that their power as legislators was diminished.

Michigan has recognized that public officials have standing to sue commensurate with their

public duties and trusts. *Romulus City Treasurer v Wayne County Drain Comm'r*, 413 Mich 728; 322 NW2d 152 (1982). In our case, however, plaintiffs have made no showing that their duties included a supervisory or regulatory function over the road commissioners.

Senator Hertel's official duties are legislative. Charter commission members Ward and Barnes's only statutory duty was to "draft a proposed charter within 180 days after the date of completing its organization as provided in section 10". MCL 45.511; MSA 5.302(11). Moreover, this charter commission expired August 5, 1982, two years after its election. MCL 45.510(4); MSA 5.302(10)(4). There is no showing that, because of his official position, Killeen has been entrusted to oversee the proper functioning of the commission.

The proposed intervenors fare no better. These plaintiffs do not have standing based upon their statutes as public officials.

The remaining issue is whether they have standing as taxpayers. We conclude that they do not.

The Court in *Menendez v Detroit*, 337 Mich 476, 482; 60 NW2d 319 (1953), observed that taxpayer standing is contingent upon a showing of a "threat that he will sustain substantial injury or suffer loss or damage as a taxpayer, through increased taxation and the consequences thereof". The plaintiff must allege with particularity how the alleged illegal act will result in such injury. *Killeen, supra,* p 18. In this case plaintiffs' allegations that the collective-bargaining agreement will result in increased taxation are general, conclusory and speculative. We hold that as such they are insufficient to confer standing under *Menendez*.

Affirmed.