# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE LAKE,

        Plaintiff-Appellee,

v

KERRI PUTNAM, also known as KERRI SKIDMORE,

        Defendant-Appellant.

FOR PUBLICATION
July 5, 2016
9:10 a.m.

No. 330955
Washtenaw Circuit Court
Family Division
LC No. 15-001325-DC

Before: METER, P.J., and SHAPIRO and O'BRIEN, JJ.

O'BRIEN, J.

Defendant, Kerri Putman, appeals by leave granted, *Lake v Putnam*, unpublished order the Court of Appeals, entered January 28, 2016 (Docket No. 330955), the circuit court's October 26, 2015 order denying her summary-disposition motion. On appeal, defendant challenges this order as well as the circuit court's November 18, 2015 order awarding plaintiff, Michelle Lake, parenting time with defendant's biological child. We reverse the October 26, 2015 summary-disposition order, vacate the November 18, 2015 parenting-time order, and remand this matter for the entry of an order granting summary disposition in defendant's favor.

Plaintiff and defendant were in a romantic relationship from 2001 until 2014. During their relationship, defendant was artificially inseminated and gave birth to the minor child at issue in this case. Shortly after the parties' relationship ended, defendant denied plaintiff's requests to spend time with the child. In light of this refusal, plaintiff filed this lawsuit, seeking parenting time with the child. Defendant filed a summary-disposition motion, arguing that plaintiff, as an unrelated third party, lacked standing to seek parenting time with the child. The circuit court denied defendant's motion on October 26, 2015, and, on November 18, 2015, the circuit court awarded plaintiff supervised parenting time with the minor child. Defendant subsequently applied for leave to appeal the circuit court's October 26, 2015 order, and we granted her application.

A circuit court's decision on a summary-disposition is reviewed de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). "Whether a party has legal standing to assert a claim constitutes a question of law that we review de novo." *Heltzel v Heltzel*, 248 Mich App 1, 28; 638 NW2d 123 (2001). Similarly, whether a parent has a sufficient basis to assert

parental rights under the equitable-parent doctrine also constitutes a question of law that we review de novo. *Killingbeck v Killingbeck*, 269 Mich App 132, 141; 711 NW2d 759 (2005). As it relates specifically to "the resolution of a child custody dispute," Michigan's Child Custody Act, MCL 722.21 *et seq.*, provides that "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28.

On appeal, defendant argues that the circuit court erred in denying her summary-disposition motion because plaintiff lacks standing to pursue parenting time with the child. We agree.

Generally, a party has standing so long as he or she has some real interest in the cause of action or its subject matter. *In re Anjoski*, 283 Mich App 41, 50; 770 NW2d 1 (2009). "However, this concept is not given such a broad application in the context of child custody disputes involving third parties, or any individual other parent[.]" *Id*. (citation and internal quotation marks omitted). This Court and our Supreme Court have specifically and unequivocally held that "a third party does not have standing by virtue of the fact that he or she resides with the child and has a 'personal stake' in the outcome of the litigation." *Id*. at 50-51, citing *Bowie v Arder*, 441 Mich 23, 42; 490 NW2d 568 (1992). Indeed, a party may not " 'create a custody dispute by simply filing a complaint in circuit court alleging that giving legal custody to the third party is in the [child's] best interests . . . .' " *Id*. at 51, quoting *Heltzel*, 248 Mich App at 28-29 (alteration by the *Anjoski* Court). "Rather, under the Child Custody Act the Legislature has limited standing for third parties to two circumstances"—under MCL 722.26b (involving third-party guardians or limited guardians) or MCL 722.26c(1)(b) (involving scenarios where the minor child's biological parents never married, where one of the child's parents has died or is missing and the other parent does not have legal custody, and where the third person is related to the child). *Id*.

In this case, it is undisputed that plaintiff is a third person, see MCL 722.22(k) (defining "third person" as "an individual other than a parent"), not a parent, see MCL 722.22(i) (defining "parent" as "the natural or adoptive parent of a child"), to the child at issue. Thus, as a third person, plaintiff must satisfy one of the limited circumstances under MCL 722.26b or MCL 722.26c(1)(b) described above. She simply does not. Thus, because plaintiff is not a parent or third party with standing under the Child Custody Act, she lacks standing to create a custody dispute. *Sinicropi v Mazurek*, 273 Mich App 149, 177; 729 NW2d 256 (2006). Accordingly, because the circuit court erred in concluding that plaintiff had standing to pursue parenting time with the child, we reverse its October 26, 2015 order denying defendant's summary-disposition motion, vacate its November 18, 2015 awarding plaintiff parenting time, and remand this matter for the entry of an order granting summary disposition in defendant's favor.

On appeal, plaintiff argues that "she has standing to bring this suit" because she "asserts a right to custody and parenting time . . . under Michigan's equitable-parent doctrine." Under the equitable-parent doctrine, a husband who is not the biological father of a child born or conceived during wedlock may, nevertheless, be considered that child's natural father if three requirements are satisfied: (1) the husband and the child must mutually acknowledge their father-child relationship, or the child's mother must have cooperated in the development of that father-child

relationship prior to the time that the divorce proceedings commenced; (2) the husband must express a desire to have parental rights to the child; and (3) the husband must be willing to accept the responsibility of paying child support. *Van v Zahorik*, 460 Mich 320, 330; 597 NW2d 15 (1999); *Atkinson v Atkinson*, 160 Mich App 601, 608-609; 408 NW2d 516 (1987). "Once it is determined that a party is an equitable parent, that party becomes endowed with both the rights and responsibilities of a parent." *York v Morofsky*, 225 Mich App 333, 337; 571 NW2d 524 (1997). Plaintiff claims that because she satisfies these three requirements, she is the child's equitable parent. She is incorrect.

While plaintiff claims that she satisfies all requirements under the equitable-parent doctrine, she ignores one crucial, and dispositive, requirement for the equitable-parent doctrine to apply—*the child must be born in wedlock*. *Van*, 460 Mich at 330 (stating that the equitable-parent doctrine applies only "to a child born or conceived during the marriage."). The child at issue in this case was not born or conceived during a marriage. In fact, it is undisputed that the parties were never married. Thus, the equitable-parent doctrine does not apply. Had the parties married in another jurisdiction, for example, our conclusion may be different. See, e.g., *Stankevich v Milliron (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 3-6. While we acknowledge that the issue presented in this case is complex, we simply do not believe it is within courts' discretion to retroactively transform an unmarried couples' past relationship into marriage for custody proceedings in light of the United States Supreme Court's decision in *Obergefell v Hodges*, ___ US ___; 135 S Ct 2584; 192 L Ed 2d 609 (2015), at the request of one party. Stated differently, it is, in our view, improper for a court to impose, several years later, a marriage upon a same-sex unmarried couple simply because one party desires that we do so.

On appeal, plaintiff asks that we follow *Ramey v Sutton*, 2015 OK 79; 362 P3d 217 (2015), a case that is admittedly similar to the one at bar. In that case, a same-sex couple separated after an eight-and-a-half-year relationship. *Id*. at ¶ 6. During their relationship, one of the parties, Sutton, was artificially inseminated and gave birth to a child. *Id*. Upon their separation, Ramey filed a lawsuit against Sutton, requesting that she be recognized as the child's legal parent for parenting-time and custody determinations. *Id*. at ¶ 17. Sutton objected, arguing that Ramey lacked standing as a mere third party. *Id*. The Oklahoma Supreme Court agreed with Ramey and recognized her "as being *in loco parentis* to [the parties'] child and . . . entitled to a best interests of the child hearing." *Id*. Plaintiff asks that this Court reach the same conclusion, but we cannot do so for several reasons.

First, Oklahoma's "in loco parentis" status does not only apply to married couples; rather, it appears to apply to anyone "who has assumed the status and obligations of a parent without a formal adoption." See *Workman v Workman*, 1972 OK 74, ¶ 10; 498 P2d 1384 (1972) (citation and internal quotation marks omitted), overruled on other grounds by *Unah By and Through Unah v Martin*, 1984 OK 2; 676 P2d 1366 (1984). Michigan's equitable-parent doctrine, on the other hand, applies only to married couples. Additionally, our Supreme Court has squarely rejected the argument that holding oneself out as a child's parent, alone, is sufficient to be considered that child's parent under the equitable-parent doctrine. See, e.g, *Van*, 460 Mich at 331 (stating that the equitable-parent doctrine does *not* apply to cases where the child was not born in wedlock). While, again, we understand that the issue presented here is complex, especially in light of the *Obergefell* decision, we simply do not believe it is appropriate for courts

to retroactively impose the legal ramifications of marriage onto unmarried couples several years after their relationship has ended. That, in our view, is beyond the role of the judiciary. See *id*. ("The creation and extension of rights relating to child custody matters is clearly the province of the Legislature, not the judiciary.").

Plaintiff also argues that such a conclusion violates her constitutional rights to due process and equal protection. "The Fourteenth Amendment of the United States Constitution provides that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.' " *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014), quoting US Const Am XIV, § 1 (alterations by the *Sanders* Court). The Due-Process Clause requires, procedurally, "notice and a meaningful opportunity to be heard before an impartial decision-maker," *In re TK*, 306 Mich App 698, 706; 859 NW2d 208 (2014), and, substantively, that government action "be rationally related to a legitimate governmental interest," *Landon Holdings, Inc v Grattan Twp*, 257 Mich App 154, 173; 667 NW2d 93 (2003). The Equal-Protection Clause "requires that all persons similarly situated be treated alike under the law." *Shepard Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 763 NW2d 695 (2010).

In this case, it is somewhat difficult to discern the basis for plaintiff's due-process and equal-protection claims. It appears that she is, in essence, arguing that she is being treated unfairly due to her sexual orientation, but such an assertion is not factually supported by the record or legally supported by existing authority. Again, had she been married to the child's biological parent, regardless of whether the biological parent was male or female, the outcome of this appeal would have been different. *Stankevich*, ___ Mich App at ___; slip op at 3-6. But, she was not. In fact, plaintiff has not presented any evidence to support a conclusion that she and defendant would have been married but for Michigan (or Florida, where the parties also resided for a period of time) law. Plaintiff has not provided any evidence reflecting the parties' intent to marry, the parties never made an effort to marry in another jurisdiction, the parties chose not to have plaintiff adopt the child in Florida despite being legally able to do so, and defendant adamantly denies that she would have ever married plaintiff even if legally able to do so. Furthermore, we, as well as our Supreme Court, have expressly chosen not to extend the equitable-parent doctrine beyond the marriage context with respect to heterosexual couples, *Bay Co Prosecutor v Nugent*, 276 Mich App 183, 191, n 2; 740 NW2d 678 (2007); *Van*, 460 Mich at 330-335, and to do so only for same-sex couples would be improper, *Kolailat v McKennett*, unpublished opinion per curiam of the Court of Appeals, issued December 17, 2015 (Docket No. 328333), pp 2-3 (declining to apply the equitable-parent doctrine to a same-sex couple after the *Obergefell* decision).

Lastly, plaintiff argues that our conclusion violates the child's constitutional right to equal protection. "Generally, persons do not have standing to assert constitutional or statutory rights on behalf of another person." *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009). That is precisely what plaintiff is trying to do, i.e., assert the child's constitutional rights. Accordingly, we reject this argument as well.

In sum, while we acknowledge that the issues presented in child-custody disputes, including those involving same-sex couples, present challenges, we conclude that the equitable-parent doctrine does not extend to unmarried couples. *Van*, 460 Mich at 331. This is true

whether the couple involved is a heterosexual or a same-sex couple. Consequently, because the equitable-parent doctrine does not apply, plaintiff lacks standing to seek parenting time in this case. The circuit court thus erred in denying defendant's summary-disposition for that reason. We therefore reverse the circuit court's October 26, 2015 order denying defendant's summary-disposition motion, vacate the circuit court's November 18, 2015 order awarding plaintiff parenting time, and remand this matter for the entry of an order granting summary disposition to defendant.

Reversed and remanded. No taxable costs pursuant to MCR 7.219, a question of public policy involved.

/s/ Colleen A. O'Brien
/s/ Patrick M. Meter